**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DESIREE MARTINEZ; WE ARE NOT INVISIBLE, a nonprofit corporation on behalf of and/or as next friend of JOHN DOE and others similarly situated,<br><br>            Plaintiffs,<br>    v.<br><br>CITY OF FRESNO, et al.,<br><br>            Defendants. | Case No. 1:24-cv-00021-JLT-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>(Doc. 20) |

Desiree Martinez is a resident of Fresno County, California. Plaintiff WANI is a nonprofit corporation in California that seeks to assist the unhoused population in the County of Fresno. They bring this action against the City of Fresno and several of its law enforcement officers, alleging various violations of federal and state laws in connection with their treatment of unhoused individuals and Martinez. (Doc. 1.) For the reasons set forth below, the Court **GRANTS IN PART** Defendants' motions to dismiss.

## I.    INTRODUCTION

### A.  Background

The instant action arises from how the City of Fresno and its police officers have interacted with Martinez and her nonprofit organization, WANI. They are known advocates for the local unhoused population. (Doc. 9 at ¶¶ 4–5.)

1

1. Martinez

Martinez is a well-known advocate for the rights and welfare of unhoused individuals. (Doc. 9 at ¶ 4.) She monitors the various homeless encampments throughout the City, attend public meetings, and posts on social media about mistreatment of unhoused individuals, among other activities. (*Id*.) "[V]irtually all Fresno Police Department personnel are familiar with her and recognize her as an advocate for the unhoused and a vocal critic of local law enforcement." (*Id*.)

On January 4, 2022, Martinez was video recording and live-streaming actions by City officials at a homeless encampment. (Doc. 9 at ¶¶ 18, 20.) Martinez alleges that while she "was openly and obviously recording, [Officer Lacy] violently attacked her, using unreasonable and unnecessary force." (*Id*. at ¶ 20.) Officer Lacy was "cited for" battery, "but no criminal charges was recommended or filed against him." (*Id*. at ¶ 21.)

On March 17, 2022, Martinez was at a homeless shelter subsidized by the City "advocating for" homeless individuals. Martinez "attempted to intervene peacefully on [an] unhoused female's behalf and explained her trauma history." (Doc. 9 at ¶ 23.) Officer Ramirez "repeatedly threatened to arrest her." (*Id*.) When Martinez "made it clear that she was not going to accept being threatened, [Officer Ramirez] arrested [her], . . . and held her handcuffed in his patrol vehicle for nearly an hour before citing and releasing her." (*Id*.) Martinez further alleges that Officer Ramirez "wrote an intentionally false report of the incident that inaccurately suggested that [Martinez] had interfered with him in their performance of his duties in violation of California Penal Code § 148(a), a misdemeanor." (*Id*.) This arrest occurred the day after she filed a lawsuit "against [the City of Fresno], an event that was well publicized." (*Id*.)

On August 31, 2022, Martinez was acting as an advocate for the unhoused community in the Roeding Park area when she encountered Officer Khan. (Doc. 9 at ¶ 33.) Martinez parked her vehicle a significant distance away and was not driving at the time she encountered Officer Khan, who demanded to see Martinez's driver's license. (*Id*.) Officer Khan gave Martinez a "warning" for not having a valid driver's license, allegedly due to an "erroneous suspension." (*Id*.) Martinez alleges that Officer Khan stopped her without reasonable suspicion, in retaliation of her

2

unspecified First Amendment activity. (*Id*.)

On June 14, 2023, Martinez was "filming the interaction of Fresno Police Officers with an unhoused man from more than 100 yards away[.]" (Doc. 9 at ¶ 35.) Officer Guerra approached her "and asked her to move to a position where she would have been unable to capture the incident on video." (*Id*. at ¶ 37.) After her refusal, Officer Guerra and Corporal Wilson arrested her, held her in custody for an hour, and cited her for violating California Penal Code § 148(a). (*Id*. at ¶¶ 38–39.)

On October 25, 2023, Martinez "was advocating for unhoused persons in Fresno's Tower District when she got into a verbal dispute with private citizens at a tool shop." (Doc. 9 at ¶ 40.) Officer Enos, who arrived on the scene, told Martinez that "she 'does not have very many friends in the Fresno Police Department' and that she had 'made an enemy of him.'" (*Id*. at ¶ 41.) Officer Enos "encouraged one of the private citizens to press trespass and battery charges and initiate a citizen's arrest" against Martinez. (*Id*. at ¶¶ 42–43.) Martinez was cited for trespassing and battery. (*Id*. at ¶ 43.)

Martinez further alleges that Officer Rocha has "consistently harassed" her: Officer Rocha has threatened to seize her new truck and has repeatedly recited her personal information—such as her birth date and home address—in front of her. (Doc. 9 at ¶ 46.)

### 2.   John Doe and WANI

WANI—which stands for we are not invisible—is a nonprofit corporation in California founded by Martinez. (Doc. 9 at ¶ 5.) Its "mission is to advocate for, provide services to, and to raise funding for the unhoused in the City and County of Fresno." (*Id*.) WANI claims that its constituency is the "local unhoused population." (*Id*.)

John Doe is an unknown homeless individual who was sleeping at the plaza in front of the Fresno Police Department headquarters on August 1, 2022, when a law enforcement vehicle drove over him, severely injuring him. (Doc. 9 at ¶ 27.) He "was whisked away shortly after . . . and has remained in anonymity since then." (*Id*. at ¶ 28.) The named plaintiffs—Martinez and WANI—have never spoken to him and have no idea as to his identity or his current condition. (*See id*. at ¶¶ 27–32.) WANI nonetheless claims to be proceeding on John Doe's behalf as his

next friend. (*Id*. at ¶ 6.)

**B.  Procedural History**

Plaintiffs filed this instant action on January 4, 2024 against the City of Fresno ("City"), Officers Howard Lacy, David Ramirez, Omar Khan, R. Guerra, Matthew Enos, Steve Rocha, and Corporal Christopher Wilson. (Doc. 1.) The First Amended Complaint ("FAC") alleges the following causes of action: (1) excessive in violation of the Fourth Amendment; (2) retaliatory force in violation of the First Amendment; (3) retaliatory arrest in violation of the First Amendment; (4) retaliatory detention in violation of the First Amendment; (5) retaliatory prosecution in violation of the First Amendment; (6) retaliatory harassment in violation of the First Amendment; (7) disparate treatment of John Doe versus other victims of police misconduct in violation of the Equal Protection Clause; (8) denying John Doe's substantive due process rights in violation of the Fifth and Fourteenth Amendments; (9) conspiracy to obstruct justice under 42 U.S.C. § 1985; (10) excessive force under state civil rights law; (11) battery under state common law; (12) retaliatory prosecution under state civil rights law; (13) retaliatory arrest under state civil rights law; and (14) seeking declaratory and injunctive relief for violations of federal law pursuant to 28 U.S.C. § 2201. (Doc. 9.)

Defendants moved to dismiss all but the first and second causes of action for failure to establish standing and for failure to state a claim upon which relief can be granted. (Doc. 20.) The matter is fully briefed and ripe for review. (Pls.' Opp'n, Doc. 22; Defs.' Reply, Doc. 24.) As indicated, (Doc. 21), the Court took the matter under submission without oral argument.

**II.    CLAIMS RELATED TO WANI AND JOHN DOE**

WANI seeks to bring several claims on behalf of homeless people in Fresno, including a yet-to-be-identified individual, John Doe. Under the seventh cause of action, WANI alleges that the City and its law enforcement officers have engaged in discriminatory law enforcement against unhoused individuals in violation of the Equal Protection Clause. (Doc. 9 at ¶¶ 98–104.) The eighth cause of action alleges that police officers have engaged in "unwarranted seizure and destruction of [unhoused people's] personal property" in violation of their Fifth, Eighth, and Fourteenth Amendment rights. (*Id*. at ¶¶ 105–09.) The fourteenth cause of action seeks injunctive

4

relief for these causes of action. (*Id.* at ¶¶ 144–48.) Finally, WANI alleges under the ninth cause of action that police officers prevented John Doe or those acting on his behalf from filing lawsuits in violation of 42 U.S.C. § 1985(2). (*Id.* at ¶¶ 110–14.)

## A. Standing

"'The part[ies] invoking federal jurisdiction bear[] the burden of establishing' . . . standing," *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)), "for *each claim* that they press and for *each form of relief* that they seek (for example, injunctive relief and damages)[,]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citations omitted) (emphases added). "[W]hen, as here, there are multiple defendants and multiple claims, at least one [named] plaintiff must have standing as to each defendant and each claim." *See Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1010 (E.D. Cal. 2021) (citation and quotation marks omitted); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) ("[A]t least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." (citation omitted)); *see also Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) ("[N]amed plaintiffs generally lack standing to sue defendants that have not injured them personally, even if they allege that those defendants injured absent class members." (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004))). Plaintiff WANI claims that it has associational standing and "next friend" standing on behalf of John Doe. (Doc. 22 at 7–9.)

### a. Associational Standing

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (citation omitted). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). WANI argues that it has organizational standing because one of its alleged members, John Doe, was injured. (Doc. 22 at 7 & n.2.) WANI,

5

however, have proffered little more than verbatim recitation of the elements of the *Hunt* test. (Doc. 9 at ¶ 30; Doc. 22 at 6–7.) This cannot be sufficient to establish Article III standing.

In particular, though an organization may represent its *voluntary* members, *Hunt*, 432 U.S. at 342, there is no indication that John Doe ever knew of WANI, much less voluntarily joined it. The question is therefore whether WANI has certain "indicia of membership," such that WANI may represent non-members/involuntary members like John Doe. The "indicia of membership" inquiry is satisfied "so long as the organization is sufficiently identified with ***and subject to the influence of those it seeks to represent*** as to have a personal stake in the outcome of the controversy." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citation and quotation marks omitted) (first emphasis in original). This requires WANI to show that unhoused individuals like John Doe actively participate in—or otherwise substantially influence—WANI's operation, and not mere passively receiving WANI's assistance, much like how a local food bank may not establish associational standing by simply claiming that everyone who has ever sought its assistance is a member. Something more is needed. *See, e.g.*, *Coal. on Homelessness v. City & Cnty. of San Francisco*, 786 F. Supp. 3d 1264, 1278 (N.D. Cal. 2025) (finding indicia of membership where *members* are regularly and actively participating in meetings or volunteering work). However, nothing in the FAC alleges that WANI, as an entity, is substantially influenced, operated, or controlled by John Doe or people like him.

WANI cannot establish associational standing with respect to the seventh, eighth, and ninth causes of action, (Doc. 9 at ¶¶ 102–03, 107–08, 113), because the third prong of *Hunt* prohibits associational standing when suing for retrospective damages,[1] *see Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015) (Mem.) ("The Union's claims for damages run afoul of the third prong, because those claims require the participation of individual members." (citing *Warth v. Seldin*, 422 U.S. 490, 515–16 (1975))); *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th

---

[1] This prohibition is prudential and, therefore, may be abrogated by statute. *See, e.g.*, *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("The questions presented here are whether, in enacting the WARN Act, Congress intended to abrogate this otherwise applicable standing limitation so as to permit the union to sue for damages running to its workers, and, if it did, whether it had the constitutional authority to do so. We answer yes to each question.").

Cir. 1990) (denying associational standing because "individual Union members will have to participate at the proof of damages stage"); *Riverside All of Us Or None v. City of Riverside*, No. 5:23-cv-01536-SPG-SP, 2024 WL 4002614, at *4 (C.D. Cal. Jan. 23, 2024) (citing *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991))). Accordingly, the Court rejects WANI's attempt to establish associational standing.[2]

### b. "Next Friend" Standing

"In order to establish next-friend standing, the putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1159–60 (9th Cir. 2002) (quoting *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)). WANI's theory of next-friend standing is utterly without merit.

First, even though Plaintiffs do not know if John Doe "is dead or alive, how severely he was injured, or his current whereabouts," (Doc. 9 at ¶ 30), they nonetheless insist, in a wholly conclusory manner, "that John Doe is unable to litigate on his own behalf, either due to unavailability, incapacity, incompetence, or other reasons." (Doc. 22 at 8 (citing (Doc. 9 at ¶ 6).) The allegation that John Doe is *presently* incapacitated is even more baseless and speculative considering that Plaintiffs filed the instant action *seventeen* months after John Doe was allegedly run over by a police vehicle. As such, the Court finds zero factual basis for believing that John Doe is presently "unable to litigate his own cause."

Second, the Court finds no evidence of significant relationship between WANI and John

---

[2] Even were the Court to find that WANI has associational standing with respect to the fourteenth cause of action, which seeks injunctive relief, WANI nonetheless fails to state a claim upon which relief can be granted. This is because the FAC proffers nothing more than "[t]hreadbare recitals of the elements of [*Monell* liability], supported by mere conclusory statements[.]" *See Bain v. California Tchrs. Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (internal citation and quotation marks omitted). For example, paragraph 146 of the FAC states, without any specific, factual allegation, that "the City of Fresno and the policymakers of the Fresno Police Department have failed to train, encourage, instruct, or supervise the individual defendants not to enforce laws and initiatives against unhoused persons based on their unhoused statuses, or not to seize and destroy the property of unhoused persons." (Doc. 9 at ¶ 146.) Similarly, the causation requirement for *Monell* liability is not satisfied by simply declaring, in a single sentence, that "the City of Fresno's policies, practices, and/or customs that were the moving force behind the constitutional violations." (*See id.* at ¶ 146.)

Doe; indeed, there is zero evidence or allegation that John Doe has ever spoken to, heard of, or met with WANI. "[WANI i]s, in short, a total stranger to [John Doe]. [WANI has] no relationship at all with him, much less a significant one." *See Sanchez-Velasco v. Sec'y of Dep't of Corr.*, 287 F.3d 1015, 1027 (11th Cir. 2002).

WANI seems to allege that it "has a significant connection" with John Doe merely because he is "among the *class* of persons" that "it has long advocated for, provided services to, and sought funding to assist." (Doc. 9 at ¶ 6 (emphasis added).) The Court finds no case law to support this remarkable proposition and, therefore, declines to trivialize the "significant connection" requirement.

To be sure, courts have lowered this requirement in truly "*extreme* case[s]," where "a person with 'some' relationship conveying some modicum of ***authority or consent***, 'significant' *in comparison* to [the real party]'s other relationships, could serve as the next friend." *Coal. of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) (emphases added). In one such case, which involved an unnamed real party in interest in U.S. military detention in Iraq, the district court accepted the ACLU's argument on "next friend standing [] because (1) the detainee [wa]s inaccessible, (2) the detainee ha[d] requested the assistance of counsel, and (3) 'no other putative next friend ha[d] come forward' to represent him." *ACLU ex rel. Unnamed U.S. Citizen v. Mattis*, 286 F. Supp. 3d 53, 57 (D.D.C. 2017) (citation omitted). The court did so considering the government's concession that the detainee was being held incommunicado "and therefore [could not] bring a habeas petition on his own behalf." *Id.* Accordingly, the court found the ACLU had standing to pursue its narrow request for "immediate and unmonitored access to the detainee for the sole purpose of determining whether the detainee wishes for the ACLU[] to continue th[e] action on his behalf." *Id.* at 57–60.

WANI, however, has made no effort to satisfy the *Bush* standard. There is no evidence suggesting that John Doe has asked or authorized WANI to litigate on his behalf; and, unlike the ACLU in *Mattis*, WANI is not seeking a narrowly tailored relief solely to obtain consent from the unnamed real party in interest. WANI's failure to locate John Doe does not mean he is presently detained and unable to litigate his case, nor is there any indication that John Doe's situation is

8

nearly as "extreme" as the unnamed U.S. citizen in *Mattis*. *See id*. at 54 ("The detainee, who has been classified as an enemy combatant and whose name has not been released, was advised of his right to counsel." After more than three months, "the detainee remains unnamed, uncharged, and, despite his request, without access to counsel.").

For these reasons, the Court rejects Plaintiff WANI's attempt to assert next friend standing.[3] Finally, because WANI has failed to establish associational standing, and because WANI may not assert "next friend" standing on behalf of John Doe, Plaintiffs have failed to demonstrate that at least one named plaintiff has Article III standing to bring the seventh, eighth, ninth, and fourteenth causes of action. *See Rios*, 562 F. Supp. 3d at 1010; *Ditropan XL*, 529 F. Supp. 2d at 1107. Accordingly, the Court **DISMISSES** the seventh, eighth, ninth, and fourteenth causes of action with **leave to amend**.

### III.   MARTINEZ'S FEDERAL CLAIMS

#### A.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense," *id*. at 679, and "'draw all reasonable inferences in favor of the nonmoving party[,]'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Conclusory allegations and unreasonable inferences," however, "do not provide [] a basis" for determining whether a plaintiff has plausibly stated a claim for relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

///

---

[3] Plaintiff has failed to articulate "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" related to its "next-friend" argument for standing. *See* Fed. R. Civ. P. 11(b)(2).

**B. Third Cause of Action: Retaliatory Arrest**

A "plaintiff[] bringing 'First Amendment retaliatory arrest claims' must generally 'plead and prove the absence of probable cause,' because the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest." *Ballentine v. Tucker*, 28 F.4th 54, 61–62 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 401–02 (2019)). To showing the absence of probable cause or the applicability of the *Nieves* exception, *id*. at 63, a plaintiff must show that an officer's retaliatory animus "was a substantial or motivating factor behind [her arrest]," *Nieves*, 587 U.S. at 404 (quoting *Lozman v. Riviera Beach*, 585 U.S. 87, 97 (2018)) (alteration modified).

With respect to the June 14, 2023 incident, the FAC alleges that Martinez was filming police activities from more than 100 yards away when she was arrested; and that she "was in no way involved in the incident or near" officers on the scene. (Doc. 9 at ¶¶ 35–38.) At the motion-to-dismiss stage, the Court finds sufficient plausible allegations in the complaint that Officer Guerra and Corporal Wilson had no legal authority—and therefore no probable cause—to arrest Martinez for filming from such a distance away.

Defendants further argue that the allegations in FAC show that Officer Ramirez had probable cause to arrest Martinez on March 17, 2022. (Doc. 20 at 20.) However, as Plaintiffs point out in their brief:

> The supporting allegations related to the March 17, 2022, August 31, 2022, and June 14, 2023 incidents alleged in the Corrected First Amended Complaint. DN 9, ¶¶ 22-26, 33-39. All of those incidents allege that Ms. Martinez was acting as an advocate for the unhoused in a law-abiding manner, and engaged in protected First Amendment activity, either by advocating for the unhorsed, criticizing the officers' treatment of the unhoused, or filming the officers' interaction with the unhoused. Read in the light most favoring Ms. Martinez, none of these allegations supports a finding that she broke the law, or reasonably could have been perceived to break the law.

(Doc. 22 at 11.) As such, the Court finds that the FAC—when viewed in the light most favorable to Plaintiffs—plausibly alleges that Officer Ramirez had no probable cause to arrest Martinez. For these reasons, the Court **DENIES** Defendants' motion to dismiss with respect to the third cause of action.

## C. Fifth Cause of Action: Retaliatory Prosecution

"To bring a claim for First Amendment retaliation under § 1983, plaintiffs must show: (1) they engaged in constitutionally protected activity; (2) as a result, they were subjected to adverse action by defendants that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. Where retaliatory prosecution is alleged, plaintiffs must also show the absence of probable cause." *Autotek, Inc. v. Cnty. of Sacramento*, No. 2:16-cv-01093-KJM-CKD, 2020 WL 4059564, at *7 (E.D. Cal. July 20, 2020) (internal citations omitted), *aff'd sub nom. Lull v. Cnty. of Sacramento*, No. 20-16599, 2022 WL 171938 (9th Cir. Jan. 19, 2022). Defendants argue that the allegations in FAC show that Officer Ramirez had probable cause to arrest Martinez for willfully resisting, delaying, and obstructing a peace officer. (Doc. 20 at 21 (citing Doc. 9 at ¶¶ 23–24).)

The FAC, however, alleges that Martinez was arrested while "attempt[ing] to intervene peacefully on the unhoused female's behalf and explain[] her trauma story." (Doc. 9 at ¶¶ 23–24.) This allegation, though weak, when viewed in the light most favorable to Plaintiff, is sufficient at this stage to show an absence of probable cause. The Court therefore **DENIES** Defendants' motion to dismiss with respect to the fifth cause of action.

## D. Fourth Cause of Action: Retaliatory Detention

Martinez alleges under the fourth cause of action that she was stopped without reasonable suspicion and that she was given a warning for not having a valid driver's license. (Doc. 9 at ¶ 34.) Citing to paragraphs 33 and 34 of the FAC, Defendants argue that "Officer Khan had probable cause to arrest plaintiff Desiree Martinez for willfully resisting, delaying, and obstructing Officer Khan." (Doc. 20 at 21 (citing Doc. 9 at ¶¶ 33–34).) Those two cited paragraphs, however, do not mention anything about an arrest, much less the reason for it. Indeed, Defendants' argument that Martinez was arrested for "resisting, delaying, and obstructing" Officer Khan is not tethered to the allegations in the FAC; at most, it creates a factual dispute that is not suitable for resolution on a motion to dismiss. As such, the Court **DENIES** Defendants' motion to dismiss with respect to the fourth cause of action.

11

**E.  Sixth Cause of Action: Retaliatory Harassment**

The FAC alleges that Officers Khan, Enos, and Rocha harassed and intimidated Martinez "for the purpose of chilling and deterring [her] from reasonably exercising [her] protected rights of expression." (Doc. 9 at ¶¶ 91–95.) Defendants argue that verbal harassment alone is not sufficient to state a claim of constitutional deprivation. (Doc. 20 at 21–22.)

Defendants are correct that verbal harassment, without more, may not be an independently actionable constitutional violation. *Shong-Ching Tong v. City of Pomona*, for instance, involved a situation where a plaintiff brought a § 1983 action alleging, inter alia, that a police officer violated his constitutional rights during a traffic stop. 97 F.3d 1461, 1461 (9th Cir. 1996) (Mem.) The Ninth Circuit explained that the plaintiff's "contention that [the officer] verbally harassed him during the [traffic] stop lacks merit because, even if true, mere verbal harassment does not give rise to a constitutional violation under section 1983." *Id.* (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)); *see also Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758–59 (8th Cir. 2001) ("[A]ny alleged verbal harassment, in the form of threats and unflattering remarks directed at plaintiffs, does not rise to the level required to establish a constitutional violation." (citations omitted)).

Verbal harassment becomes "an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right." *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (internal citations omitted). The latter is exemplified in *Coszalter v. City of Salem*, a First Amendment retaliation case in the employment context, where the Ninth Circuit explained that "[t]he precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases." 320 F.3d 968, 974–75 (9th Cir. 2003). Rather, the question is whether "the would-be retaliatory action is so insignificant that it does not *deter the exercise of First Amendment rights*[.] . . ." *See id.* at 975 (emphasis added); *see also Shepard v. Quillen*, 840 F.3d 686, 688–89 (9th Cir. 2016) (finding that threatening to send a prisoner to administrative segregation for reporting an officer satisfied the adverse action element of a First Amendment retaliation claim); *Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015)

12

(holding that summary judgment for the retaliation claim was improper because the verbal "complaints of discrimination to his supervisors and statements of intention to file suit were conduct protected by the First Amendment").

The Court finds no authority suggesting that a First Amendment retaliation claim is categorically barred solely because the retaliatory act was carried out verbally rather than physically. *See Boulware v. Dunstan*, No. C 09-02792 CW PR, 2011 WL 3473370, at \*7 (N.D. Cal. Aug. 9, 2011)) ("Verbal threats and 'bad-mouthing' do not always violate a plaintiff's First Amendment rights[,]" but "not all threats are non-actionable: if a person of ordinary firmness would have been chilled, a threat is actionable." (internal citations omitted)); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (explaining that "the mere *threat* of harm can be an adverse action," and that "an allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim" (internal citation omitted) (emphasis in original)). Rather, "an adverse action that may not be independently actionable"—such as verbal threat or harassment—may "be actionable under § 1983 if it is done as retaliation for engaging in protected First Amendment activity[,]" so long as the retaliatory act is "sufficient to deter an ordinary person from engaging in that First Amendment activity in the future." *See Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 622 (7th Cir. 2012) (internal citations omitted); *see also Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) (Posner, J.) ("[F]or retaliation for filing petitions to be actionable, the means of retaliation must be sufficiently clear and emphatic to deter a person of 'ordinary firmness' from submitting such petitions in the future." This means "that 'simple verbal harassment[,]' . . . even threats[,] may not suffice." (internal citations omitted)).

Here, Martinez alleges that Officer Rocha has "consistently harassed" her by threatening to seize her new truck and reciting her personal information—such as her birth date and home address—in front of her. (Doc. 9 at ¶ 46.) Because Defendants have not addressed the First Amendment retaliation issue—i.e., whether a person of ordinary firmness in Martinez's shoes would have been deterred from speaking out—the Court **DENIES** their motion to dismiss with respect to the sixth cause of action.

///

## IV.    MARTINEZ'S STATE LAW CLAIMS

### A. Tenth Cause of Action: Excessive Force

A plaintiff may bring a cause of action under California Civil Code § 52.1 ("Bane Act") when "[a] person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b). To sufficiently plead a violation of the Bane Act, "a plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Cal. Ct. App. 2015) (citations omitted).

Plaintiffs' tenth cause of action alleges that Officer Lacy, Officer Guerra, and Corporal Wilson used excessive and unreasonable force to arrest her, in violation of § 52.1, and that the City of Fresno is vicariously liable under the same statute. (Doc. 9 at ¶¶ 115–21.)

#### 1.  Officer Lacy

Defendants argue that Martinez's claim against Officer Lacy, with respect to the incident on January 4, 2022, "is barred as a matter of law for failure to present a timely written claim for damages" to the City pursuant to Government Code § 911.2, as "evidenced by the [Fresno County] Superior Court denying . . . Martinez'[s] Petition for an Order Relieving Petitioner from Claim Filing Requirements." (Doc. 20 at 26 (internal citations omitted).) This denial was made pursuant to Section 946.6. In response, Martinez argue that the state court addressed her "petition to file late claim for damages," not the timeliness of her original claim for damages to the City, which "was never before the Superior Court for decision." (Doc. 22 at 16–17.) Martinez further argues that the timeliness of the original claim to the City is "an issue of fact that will have to be addressed" later and that "[i]t is not susceptible of adjudication on the pleadings." (*Id*. at 17.)

"A denial of a petition under section 946.6 'is a final, appealable order which is given collateral estoppel effect.'" *Holmes v. Cnty. of Orange*, No. SACV 16-00867-JLS (JCGx), 2016 WL 11744286, at *2 (C.D. Cal. Dec. 14, 2016) (quoting *Gurrola v. Cnty. of Los Angeles*, 153

14

Cal. App. 3d 145, 150 (Cal. Ct. App. 1984)). In denying Martinez's petition, the Fresno County Superior Court explained:

> Petitioner's verified petition declares that her counsel did, in fact, present a timely claim on her behalf to the City on January 18, 2022.
>
> . . .
>
> Other than simply presenting the verified petition itself, petitioner has submitted no evidence that the [original] claim was actually mailed, much less mailed to the proper entity. In fact, petitioner fails to even specify who placed the envelope in the mail . . . The declaration also attaches an exhibit showing the metadata for the electronic file used to draft petitioner's claim; however, the metadata only shows that the claim was drafted on January 17, 2022, not that it was actually mailed . . . Thus, the petitioner has failed to demonstrate that a timely claim was presented to the City.
>
> . . .
>
> As a result, petitioner has not demonstrated by a preponderance of the evidence that a timely claim was filed and that [her] failure to file a timely claim was due to mistake, inadvertence, surprise or excusable neglect. Thus, the petition will be denied.

(Doc. 20-1 at 7–8.) Crucially, the state court expressly found that Martinez "has failed to demonstrate that a timely claim was presented to the City." (*Id.*) Even after Defendants submitted a copy—and asked this Court to take judicial notice—of the Superior Court's judgment, Plaintiffs continue to insist that "[t]he timeliness . . . of the original January 18, 2022 claim for damages was never before the Superior Court for decision." (Doc. 22 at 16–17.) This contention is incorrect. The issue of timeliness of the original claim for damages was decided on the merits. The Court therefore agrees with Defendants that Martinez is estopped from re-litigating whether she submitted a timely notice for damages.[4] Accordingly, the Court **DISMISSES** the tenth cause of action **WITH PREJUDICE** with respect to Officer Lacy.

### 2. Officer Guerra and Corporal Wilson

Defendants contend, in a single conclusory sentence, that "the FAC contains no evidence to establish" that Officer Guerra and Corporal Wilson interfered with "Martinez['s] legal rights by the use of threats, intimidation, or coercion." (Doc. 20 at 27 (citing Doc. 9 at ¶¶ 35–39); *see*

---

[4] Plaintiffs seem to have submitted the same documents to this Court and to the Fresno County Superior Court. (Doc. 22 at 22–38.)

*also* Doc. 24 at 11 (similar).) This argument is undeveloped and fails to address the allegations of the Complaint. *See California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018) ("We have held that arguments are waived where the appellant does not present any argument to support its assertions and cites no authority. Inadequately briefed and perfunctory arguments are also waived." (internal citations omitted)). For instance, Defendants have not clearly and explicitly argued about the lack of specific intent or the absence of excessive force. *See, e.g.*, *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) ("[T]he Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" (citation omitted)); *Haynes v. City & Cnty. of San Francisco*, No. C 09-0174 PJH, 2010 WL 2991732, at *7 (N.D. Cal. July 28, 2010) ("The act underlying the excessive force claim— Morgado pushing Haynes into the wall, as depicted in the video—is sufficient evidence to create a genuine issue of material fact as to whether Morgado acted with threats, intimidation, or coercion."). Even still, the complaint alleges that, in fact, these defendants used force on Martinez on June 14, 2023, solely to prevent her from recording police interaction with an unhoused man. (Doc. 8 at 10) Accordingly, the Court **DENIES** Defendants' motion to dismiss the tenth cause of action with respect to all other Defendants.

### B. Eleventh Cause of Action: Battery

Plaintiffs allege that Officer Lacy, Officer Guerra, and Corporal Wilson committed battery on Martinez, and that the City is vicariously liable under Section 815.2. (Doc. 9 at ¶¶ 122–28.) Defendants argue that the eleventh cause of action should be dismissed with respect to Officer Lacy for failure to present a timely written claim for damages to the City. (Doc. 20 at 29 (citations omitted).) The Court agrees for reasons stated. Accordingly, the Court **DISMISSES** the eleventh cause of action **WITH PREJUDICE** with respect to Officer Lacy.

### C. Twelfth Cause of Action: Bane Act - Retaliatory Prosecution

Defendants argue that California Government Code § 821.6 bars liability from Plaintiff's state law retaliatory prosecution claim. (Doc. 20 at 27.) Section 821.6 insulates public employees from liability "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable

cause." The California Supreme Court has recently clarified that § 821.6 "immunizes public employees from claims of injury caused by wrongful prosecution." *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 915 (2023).

As Plaintiffs point out, the California state legislature has explicitly abrogated immunity for certain Bane Act violations. The newly added Section 52.1(n) of the California Civil Code reads:

> The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer, as those terms are defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or directly against a public entity that employs a peace officer or custodial officer, under this section.

Cal. Civ. Code § 52.1(n).[5] Defendants have made no attempt to rebut Plaintiffs' § 52.1(n) argument. Accordingly, the Court **DENIES** Defendants' motion to dismiss the twelfth cause of action.

### D. Thirteenth Cause of Action: Retaliatory Arrest Under State Law

The thirteenth cause of action alleges that Officer Guerra and Corporal Wilson violated Martinez's right to be free from retaliatory arrests and are therefore liable under California Civil Code § 52.1. (Doc. 9 at ¶¶ 137–42.) The FAC further claims that the City of Fresno is vicariously liable under the same statute. (*Id*. at ¶ 143)

A plaintiff may bring a cause of action under California Civil Code § 52.1 ("Bane Act") when "[a] person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from

---

[5] To be clear, "California courts have held that the application of this amendment to the Bane Act is not retroactive; in other words, it does not remove immunity for acts prior to the 2022 amendment." *Doe v. Cnty. of Plumas*, No. 2:24-cv-02640-DJC-CSK, 2025 WL 2381815, at \*12 (E.D. Cal. Aug. 15, 2025) (citing *Wiley v. Kern High Sch.*, 107 Cal. App. 5th 765, 778–81 (Cal. App. 2025)).

doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (Cal. Ct. App. 2007) (citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (Cal. 1998)). To sufficiently plead a violation of the Bane Act, "a plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen*, 234 Cal. App. 4th at 67 (citations omitted). In a case alleging unlawful arrest, Section 52.1 requires a plaintiff to prove that "the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure[.] . . ." *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801–02 (Cal. Ct. App. 2017), *as modified* (Nov. 17, 2017) (citations omitted).

Defendants argue that California Government Code § 821.6 bars liability from the thirteenth cause of action. (Doc. 20 at 28.) Section 821.6 insulates public employees from liability "for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The California Supreme Court has recently clarified that § 821.6 "immunizes public employees from claims of injury caused by wrongful prosecution" but does not "confer[ ] immunity from claims based on other injuries inflicted in the course of law enforcement investigations." *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 915 (2023). In particular, "California law does not 'exonerate[ ] a public employee from liability for false arrest or false imprisonment.'" *Black v. City of Blythe*, 562 F. Supp. 3d 820, 829 (C.D. Cal. 2022) (quoting Cal. Gov't Code § 820.4; additional citations omitted); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) (Schroeder, C.J.) ("Public employees are similarly not entitled to immunity in suits for false arrest or false imprisonment [under California state law]." (citing Cal. Gov't Code § 820.4)). As such, the Court rejects Defendants' claim of § 821.6 immunity.

Defendants also argue that Martinez did not file a timely notice to the City in accordance with Government Code Section 911.2 with respect to the incident on March 17, 2022 involving Officer Ramirez, as Martinez did not present her claim to the City until August 16, 2023. (Doc.

18

20 at 28.) Even though Defendants have raised and discussed the timeliness issue, Plaintiffs have entirely failed to address it in their brief in opposition. (*See generally* Doc. 22.) And a plaintiff who "makes a claim" in a complaint "but fails to raise the issue in response to a defendant's motion to dismiss" "effectively abandoned [that] claim." *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Maldonado v. City of Ripon*, 2021 WL 2682163, at *8 (E.D. Cal. June 30, 2021) ("Plaintiff does not address Defendants' arguments regarding punitive damages in his opposition to the motion to dismiss and therefore concedes the arguments. Accordingly, Plaintiff's claim for punitive damages is [dismissed] without leave to amend." (internal citation omitted)). The Court further notes that the FAC does not affirmatively allege compliance with the notice requirement with respect to the March 17, 2022 incident, (*see* Doc. 9 at ¶ 3), a failure that warrants dismissal for failure to state a claim, *see Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1119 (Cal. Ct. App. 2020); *Butler v. Los Angeles Cnty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988)). The Court therefore **DISMISSES** the eleventh cause of action **WITH PREJUDICE** with respect to Officers Lacy and Ramirez.

Finally, Defendants contend that the FAC contains no evidence that Officer Guerra and Corporal Wilson interfered with Plaintiff's rights by the use of threats, intimidation, or coercion, for Defendants had probable cause to arrest Martinez. (Doc. 20. at 27.) The Court has already found in Part III.B above that the FAC has plausibly alleged that Officer Guerra and Corporal Wilson had no probable cause to arrest her. Accordingly, the Court **DENIES** Defendants' motion to dismiss the eleventh cause of action with respect to Officer Guerra and Corporal Wilson.

**CONCLUSION**

Based upon the foregoing, the Court **ORDERS**:

(1) Defendants' Motion to Dismiss (Doc.20) is **GRANTED IN PART**

    a.  Plaintiffs' tenth and eleventh causes of action are **DISMISSED with PREJUDICE** as to Officer Lacy.

    b.  Plaintiffs' thirteenth cause of action is **DISMISSED with PREJUDICE** as to Officers Lacy and Ramirez.

    c. Plaintiffs' seventh, eighth, ninth, and fourteenth causes of action are **DISMISSED with 21 days leave to amend**.

(2) Defendants' Motion to Dismiss (Doc. 20) is **DENIED IN PART** as to the third, fourth, fifth, sixth, and twelfth causes of action.

(3) Defendants' Motion to Dismiss (Doc. 20) the tenth and thirteenth causes of action is **DENIED IN PART** as to Officer Guerra and Corporal Wilson.

IT IS SO ORDERED.

Dated:   **March 20, 2026**

UNITED STATES DISTRICT JUDGE